UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANTHONY L.,

        Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

---

22-CV-06387-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 12)

Plaintiff Anthony L.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Supplemental Security Insurance ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 8) is granted, and defendant's motion (Dkt. No. 9) is denied.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed for SSI on August 13, 2019, with an alleged onset date of January 30, 2019. (Administrative Transcript ["Tr."] 15, 200-01). The application was initially denied on February 18, 2020, (Tr. 15, 98-103), and on reconsideration on December 8, 2020. (Tr. 15, 118-29). Plaintiff filed a written request for hearing on February 3, 2021. (Tr. 130-45). On November 3, 2021, Administrative Law Judge ("ALJ") Brian LeCours held a telephone hearing at which Plaintiff participated, along with his non-attorney representative. (Tr. 36-66). A vocational expert also testified. The ALJ issued an unfavorable decision on November 19, 2021. (Tr. 12-35). The Appeals Council ("AC") denied review. (Tr. 1-6). This case followed.

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*

§§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is

not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 13, 2019, the application date. (Tr. 17). At step two, the ALJ found that Plaintiff has the following severe impairments: anxiety disorder and borderline intellectual functioning. (Tr. 18-19). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19-22).

After step three, but prior to step four, the ALJ found Plaintiff to have the RFC to perform work at all exertional levels with the following nonexertional limitations:

> [T]he claimant can perform unskilled tasks (work requiring little or no judgment to do simple duties that can be learned on the job in a short period of time). He can perform work involving simple work-related decisions with few workplace changes. He can tolerate no more than occasional interaction with the general public and no more than frequent interaction with coworkers and supervisors. He can have no requirement to read instructions or write reports. His work cannot require complex math calculations (i.e., no multiplication or division).

(Tr. 22-27). At step four, the ALJ determined that Plaintiff has no past relevant work. (Tr. 27). At the fifth step, the ALJ determined that Plaintiff can perform other work that exists in significant numbers in the national economy and, thus, is not disabled. (Tr. 27-28).

IV. *Plaintiff's Challenge*

Plaintiff argues, *inter alia*, that the case must be remanded because the AC failed to provide a legally sufficient reason for rejecting Plaintiff's valid IQ testing and failed to develop the record by ordering additional cognitive testing. The Court agrees.

On February 2, 2010, when Plaintiff was 15 years old and in the 9th grade, a school psychologist administered a Psycho-Educational Reevaluation of Plaintiff (the "2010 Report"). (Tr. 342-43). The 2010 Report stated that Plaintiff had a reported history of high lead levels, a far below average potential, a history of poor attendance, and was currently failing all his classes. (Tr. 342). The 2010 Report also indicated that Plaintiff's most recent intelligence test score, which was administered in 2006 when Plaintiff was in 6th grade, was a full-scale IQ score of 61. (Tr. 342). The 2010 Report also provided test results indicating that Plaintiff was performing far below grade level. (Tr. 342-43).

Attached to the 2010 Report is a School Psychological Evaluation by a school psychologist dated December 15, 2006 (the 2006 Report") (Tr. 344-48), when Plaintiff was in the 6th grade. The 2006 Report indicated that Plaintiff had a speech and/or language impairment; that he repeated the 1st grade and had a long history of academic difficulties; that his 5th grade state test results were poor; that his medical records indicate a history of elevated lead levels and fluctuating hearing loss; that he had a history of sleep difficulties; and that he had received special education since the 1st grade, including a consultant teacher, integrated special class, individual and group speech-language

therapy and counseling. (Tr. 344-47). The 2006 Report also listed Plaintiff's IQ score of 61, which fell within the Well Below Average range. (Tr. 346).

The ALJ rejected Plaintiff's low IQ score, stating that "it is not clear this intellectual functioning scores [sic] are a valid representation of the claimant's intellectual abilities." (Tr. 21). The ALJ stated two reasons for this conclusion: (1) the IQ test was administered in 2006, when Plaintiff was only 12 years old; and (2) the report associated with the testing (the 2006 Report) indicates that poor motivation, tiredness, and possible sleep deprivation could have contributed to Plaintiff's academic delays. (Tr. 21). Neither one of these reasons is a legally sufficient rationale for rejecting the only IQ test score in the record.

Absent contrary evidence, there is a presumption that a person's IQ remains fairly constant throughout his or her life. *Talavera v. Astrue*, 697 F.3d 145, 152 (2d Cir. 2012). In other words, there is a presumption that intellectual disorder is not a condition that improves over time. *See Ferguson v. Astrue*, 2010 WL 7746198, *4 (W.D.N.Y. July 30, 2010) (citing *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir.2001)); *Douglass v. Astrue*, 496 Fed.Appx. 154, 156 (2d Cir. 2012). Here, there is nothing in the record reflecting improvement in Plaintiff's cognitive functioning, and the ALJ's rejection of the only IQ test score in the record is inconsistent with the appropriate legal standard. *See Juckett ex rel. K.J. v. Astrue*, 2011 WL 4056053 (N.D.N.Y. June 29, 2011) report and recommendation adopted sub nom. *Juckett v. Astrue*, 2011 WL 4055296, *7 (N.D.N.Y. Sept. 12, 2011); *Brummett ex rel. L.R. v. Astrue*, 2012 WL 432099, at *4 (N.D.N.Y. Feb. 10, 2012); *Kennerson v. Astrue*, 2012 WL 3204055, *8 (W.D.N.Y. Aug. 3, 2012) (citing *Davis v. Astrue*, 2010 WL 2925357, *5 (N.D.N.Y. July 21, 2010)); *Geil v. Colvin*, 2015 WL 9217026, *10 (W.D.N.Y. Dec. 16, 2015).

.        Further, the Social Security regulations state that "[o]nly qualified specialists, Federal and State agency medical and psychological consultants, and other contracted medical and psychological experts may conclude that [a claimant's] obtained IQ score(s) is not an accurate reflection of [claimant's] general intellectual functioning." 20 C.F.R. Pt. 404, Supt. P, App. 1 §12.00(H)(2)(d).  Here, the record does not contain any other intellectual or cognitive testing contradicting Plaintiff's existing IQ test scores. Neither of the agency consultants, Dr. Todd Deneen, Psy.D. and Dr. Christine Ransom, Ph.D., expressly rejected, or even reviewed, the existing IQ test results.  Nor did they administer their own cognitive testing of Plaintiff.  In fact, Dr. Deneen indicated that a specific learning disorder should be ruled out, and he actually recommended cognitive testing to confirm his diagnosis.  (Tr. 421).

What the ALJ did here was rely on his own lay opinion to reject the only existing IQ test score.  As stated, the Social Security regulations do not permit this.  If the ALJ questioned the validity of the only existing intelligence testing in the record, he should have ordered new testing.  The failure to do so was error and the case must be remanded. *See Johnston v. Comm'r of Soc. Sec.,* 2012 WL 1030462, *3, 6 (S.D.Ohio 2012) (ALJ failed to develop the record by not ordering intelligence test where school records demonstrated claimant consistently performed poorly and where claimant testified that she could not read or write well, could only perform simple math and performed limited household chores including sweeping, assisting with laundry, cooking simple meals and occasionally grocery shopping with her daughters; "a cursory review of [claimant's] school records indicate a serious intellectual deficiency which the ALJ could not ignore"); *Stutts v. Astrue,* 489 F.Supp.2d at 1294–95 (ALJ failed to develop the record by not ordering an

intelligence exam where claimant's childhood school records reflected IQ scores of 72; "standardized IQ testing was essential to a determination of whether the [claimant] meets Listing 12.05[;] ... the action will be remanded for the administration of appropriate standardized intelligence testing"); *Schwartz v. Halter,* 134 F.Supp.2d 640, 646, 656–57 & n. 18 (E.D.Pa.2001) (ALJ erred in denying attorney's request for a consultative psychological examination where claimant's school records reflecting poor performance "produced sufficient evidence to put the ALJ on notice that he may have low intelligence"); *see also Laveck v. Astrue,* 2012 WL 4491110, *5–6 (N.D.N.Y.2012) (ALJ failed to develop record by not ordering an intelligence exam where claimant testified that she had poor school performance and where consultative psychiatric exam suggested low average cognitive functioning; "there [was] scant medical evidence with regard to [claimant's] cognitive abilities[;] ... [in] the absence of any evidence relating to this impairment, the ALJ should have ordered a consultative intelligence exam"); *Johnson v. Barnhart,* 312 F.Supp.2d at 426 (remanding for ALJ to evaluate whether claimant met Listing 12.05 where school records reflected an IQ of 72); *see also Jazmin G. v. Comm'r of Soc. Sec.,* 22-CV-06155-MJR, 2024 WL 4274840, at *5 (W.D.N.Y. Sept. 24, 2024).[3]

On remand, the ALJ should order further intelligence/IQ testing of the Plaintiff.[4]

---

[3] Regardless of validity, the earlier test scores were "still ... material because they compel 'the ALJ to order an intelligence exam to assess petitioner's current intelligence level.'" *Wilson v. Comm'r of Soc. Sec.,* 2019 WL 1230015, *3 (W.D.N.Y. Mar. 15, 2019) (quoting *Swain v. Astrue,* WL 1315399, *9 (W.D.N.Y. Mar. 31, 2014)); *see also Green v. Colvin,* 2016 WL 943620, *11 (W.D.N.Y. Mar. 14, 2016) (collecting cases).

[4] The effects of Plaintiff's elevated lead levels as a child should also be explored on remand.

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is granted and defendant's motion for judgment on the pleadings (Dkt. No.9) is denied. The case is remanded for further administrative proceedings.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   January 7, 2025
         Buffalo, New York

                                    _____
                                    MICHAEL J. ROEMER
                                    United States Magistrate Judge